NO. 07-00-0206-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 16, 2001 

______________________________

JOSE NAUN ZUNIGA,

Appellant

v.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE 209
TH
 DISTRICT COURT OF HARRIS COUNTY;

NO. 789,454; HON. MICHAEL McSPADDEN, PRESIDING

_______________________________

Before QUINN, REAVIS and JOHNSON, JJ.

Jose Naun Zuniga (appellant) was indicted for and convicted of aggravated robbery.  Via one issue, he argues that his conviction should be reversed because the evidence of his guilt is factually insufficient to support the conviction.  We overrule the point and affirm.

Background

Appellant was tried and convicted for aggravated robbery and murder in a joint trial.  The State called four witnesses who were present at the time the incidents occurred.  The first witness was Teddy Charcas (Charcas) who was the victim of the aggravated robbery.  He testified that he was going over to a friend’s house around 2:00 in the morning.  His girlfriend, Teresa Ruiz (Teresa ) was with him, and he dropped her off near the door of the friend’s apartment and then left to park the car.  When he got out of the car, three Hispanic males approached and grabbed him.  Another Hispanic male approached him with a gun.  The gun was placed to his head while the others began to empty his pockets and strip him of his jewelry.  Charcas identified one of the robbers as the appellant.  Eventually, Charcas was able to get away and run to the friend’s apartment.  Before entering the apartment he heard a gunshot.  Thereafter, the police were called.  Subsequently, Charcas identified appellant while he was sitting in the police car as one of the persons who had robbed him.   At trial, Ruiz testified that after Charcas dropped her off at the apartment, she tried to get in.  But, the door was locked, and her friend was asleep.  She looked around the corner and saw Charcas surrounded by several men.  She was unable to identify any of them.  She then started pounding on the windows of the friend’s apartment until she broke one of them.  Ruiz further testified that once the window was broken, she ran back to the front door and met Charcas there.  The friend opened the door, and Ruiz and Charcas ran inside.  Ruiz also stated that she subsequently went outside and peeked around the corner.  She saw a person laying on the ground and someone standing next to him.  She did not get a good look at either person nor could she give a description of them.  

Next, the State called Rigoberto Zuniga (Rigoberto).  Rigoberto testified that he was at a night club earlier in the evening of the murder.  He met up with several individuals who included appellant and Jose Fuentes, the deceased.  Rigoberto, appellant and the deceased left in Rigoberto’s car with several other males, whom he identified as Pineda, Raul and an individual referred to as “Guatamala” or the “Guatamalan.”  Before leaving the bar, Rigoberto testified that he observed a taxi pull up and the driver hand appellant a gun.  Eventually, Rigoberto and his passengers ended up at the apartment complex where they saw Charcas walking.  It was suggested that they attack or jump Charcas.  All of the passengers got out of the car while Rigoberto remained inside.  Rigoberto testified that shortly thereafter he heard a gunshot.  He then got out of the car and saw appellant standing holding a gun and the deceased lying on the ground.  He further testified that several of the males returned to the car and they drove away.  Later, he was contacted by the police regarding the incident. 

Jose Roberto Pineda (Pineda) also was called to testify.  He testified that he was in the back seat with appellant, Raul, and the person known as Guatamala.  He further testified that once they got to the apartment complex everyone exited the car except for Rigoberto.  Once out, the deceased held a gun on Charcas while the others robbed him.  Pineda testified that he just stood there and watched.  After the person being robbed ran away, the appellant and the deceased began to argue over the gun.  Appellant wanted the gun, but the deceased refused to give it to him.  Pineda testified that both individuals were drunk.  At some point, appellant obtained the gun from the deceased and then shot the deceased in the back of the head.  Pineda stated that he then ran back to the car and left.  Later he was contacted by the police.  

Before resting, the State called three more witnesses, the deceased’s wife, a police officer who investigated the crime scene and the medical examiner who performed the autopsy on the deceased.  Appellant did not call any witnesses.  The jury convicted appellant of murder and aggravated robbery.

Standard of Review

The applicable standard of review is well settled and need not be reiterated.  It is sufficient to refer the parties to 
Cain v.  State, 
958 S.W.2d 404 (Tex.  Crim.  App.  1997) and 
Clewis v. State
, 922 S.W.2d 126 (Tex.Crim. App. 1996) for an explanation of same.   
Application of Standard

As disclosed by the background recitation above, there appears of record more than some evidence upon which a rational jury to conclude beyond reasonable doubt that Charcas was a victim of aggravated robbery committed by appellant and his comrades.  That Charcas may have testified at a prior trial that two individuals other than appellant ripped his earrings out of his ears while testifying at bar that appellant did so created a credibility issue.  The same is true about Charcas’s ability to identify appellant as one attacker while appellant sat in the police car and Charcas’s contradictory representations concerning the view of appellant obtained while the attack was ongoing.  The weight to be afforded these contradictions lies within the sole province of the jury because resolution of the issue turns on an evaluation of witness credibility and demeanor.  
Cain v.  State, 
958 S.W.2d at 409.  Though authority may vest an appellate court with some limited ability to assess witness credibility, we must remember that we are not a thirteenth juror. 
Wilson v. State, 
879 S.W.2d 309, 311 (Tex. App. -- Amarillo 1994, no pet.).  And, despite the contradictory evidence at bar, the tenor of the entire record before us does not provide us legitimate basis to usurp the jury’s prerogative.  In sum, the evidence supporting conviction is not unduly weak.  Nor is it overwhelmed by the other evidence of record.

Finding the evidence factually sufficient to support conviction, we affirm the judgment.

Brian Quinn

           Justice

Do not publish